**GRIFFIN PIPE DIVISION OF GRIFFIN WHEEL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 13728.**

United States Court of Appeals Seventh Circuit.

July 25, 1963.

---

Francis F. Sulley, Theophil C. Kammholz, William F. Price, Chicago, Ill., Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Smith, Peterson, Beckman & Willson, Council Bluffs, Iowa, of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Washington, D. C., for respondent.

Before KILEY and SWYGERT, Circuit Judges, and GRANT, District Judge.

KILEY, Circuit Judge.

This is a petition to review and set aside an order of the Board finding violation of § 8(a) (1), (3) and (5) of the National Labor Relations Act[1] and directing petitioner to reinstate strikers, "make them whole in back-pay," change its seniority policy, and post the usual notices. The Board seeks enforcement of its order.

The Steelworkers Union[2] was certified as bargaining agent of the employees of

1. 29 U.S.C. § 158(a).

2. United Steelworkers of America, AFL-CIO.

petitioner's Council Bluffs, Iowa, plant and in 1960 and 1961 was negotiating with petitioner for a collective bargaining contract. On July 6, 1961, having several points of disagreement with petitioner, most of petitioner's employees went on strike, and petitioner continued in operation upon a reduced scale.

On July 11, petitioner in a letter [3] to its employees gave notice that the "Company must adopt a seniority policy that will protect the job security of the employees who have remained at work or returned to work, and of the replacements * * *." The letter was advertised in local newspapers. On July 13, non-strikers were permitted to bid on jobs vacated by strikers, and on July 14 and 15 the first of "some" thirty-four replacements were hired.

After the letter of July 11 was written, the Union gave the Federal Mediation and Conciliation Service notice of its desire to resume negotiations. A conciliator met with the party negotiators. The parties met July 12, and again on the 14th. At the latter meeting the superseniority policy question arose. The next day petitioner submitted to the non-strikers the question of relinquishing the benefits of that policy. They voted not to relinquish. On July 16 the Union rejected the superseniority clause for the collective bargaining contract. The strikers met that evening and voted unanimously to demonstrate their opposition to the proposal by turning out in large numbers on the picket line the next morning. The strike ended, on strikers' vote, July 18. The next day some strikers were required to bid on available jobs, some were given jobs different from their pre-

strike jobs and some were not reinstated. The charges by the Union and the General Counsel's complaint followed.

The Trial Examiner found that by "announcing and granting superseniority" to non-strikers, returning strikers and replacements, petitioner refused to bargain collectively and engaged in unfair labor practices in violation of § 8(a) (5) of the Act; and by "interfering with, restraining and coercing" its employees, violated § 8(a) (1) of the Act. The Board approved those findings but found, as the Trial Examiner had not found: 1) that petitioner was guilty of an additional violation of § 8(a) (5) and (1) by insisting on the superseniority policy contract clause; and 2) that its insistence on the superseniority policy prolonged and aggravated the economic strike, thereby converting it into an unfair labor practice strike, rendering petitioner's refusal to reemploy certain of the strikers and its failure to reinstate others to their former or substantially equivalent positions unlawful discrimination within the meaning of § 8(a) (3) and (1) of the Act.

Petitioner has conceded in this court that its superseniority policy is unlawful per se, under the decision of the Supreme Court in N. L. R. B. v. Erie Resistor Corporation, 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963), filed since this appeal was perfected. This removes that issue from the case.

■■ We find no merit in the argument that petitioner was trapped by the Supreme Court decision in Erie Resistor because of an Administrative Decision of the General Counsel, written by the then General Counsel in June, 1960. That

---

3. The July 11 letter read in part as follows:

"In order to retain the employees who have remained at work or returned to work, and obtain replacements, the Company must adopt a seniority policy that will protect the job security of the employees who have remained at work or returned to work, and of the replacements for jobs unfilled as of 8:00 a. m. Thursday, July 13, 1961, if such replace-

ments desire to become permanent employees. Effective 8:00 a. m. Thursday, July 13, 1961, any man who returns to work after 7:00 a. m. Thursday, July 13, 1961, will in event layoff becomes necessary be laid off ahead of men who remained at work or returned to work before such time, and replacements desiring to become permanent employees who are hired before the man returns to work."

decision did not bind the Board whose decision to the contrary was sustained by the Supreme Court, and we see no inequity in the Board's order at bar.

The first question is whether there is substantial evidence that petitioner insisted on including the unlawful superseniority policy in any agreement.

The negotiating parties had had about forty meetings on economic issues, an impasse having been reached June 27. The strike began July 6. The parties met July 12 and 14, the strike still in progress, and the Union submitted a new proposal. Petitioner's negotiator then stated that the offer was "down to earth" but the superseniority letter of July 11 had raised new issues. The July 14 meeting ended with petitioner's negotiator hopeful that he could work out the superseniority commitment with the employees. The employees refused to have the commitment worked out, and on July 16 petitioner's negotiator proposed including superseniority in the contract. The Union negotiator rejected the proposal as "absolutely not acceptable."

There is evidence that the company negotiator stated superseniority would "have to be" in the agreement. He did not contradict the statement attributed to him, but testified he did not insist that superseniority be included, and that he had no opportunity, because of the Union negotiator's attitude, to withdraw the proposal. There is a substantial basis in the record for the Board's finding that after the conciliator separated the parties upon the Union negotiator's heated reaction, the only offer to negotiate further was to discuss a limitation upon the proposed superseniority clause. Finally, the company letter written July 17 to the employees supports the Board's finding " * * * negotiations failed primarily because the Company refused to renege on its commitments to employees * *" with respect to superseniority.

■ We conclude there is substantial evidence to support the finding that petitioner insisted on including superseniority in the contract, and we therefore see no error in the Board's conclusion that petitioner failed to bargain in good faith in violation of § 8(a) (5) and (1) of the Act.

The next question is whether there is substantial evidence to support the finding that insistence on the superseniority clause prolonged and aggravated the strike so as to convert it from an economic to an unfair labor practice strike.

When the Union made its new offer, during the strike on July 14, the company stated that if the Union had made the offer before the superseniority commitment had been made, the parties would have had a contract. The nonstriking employees, of course, did not want the commitment to be withdrawn, and the company finally took credit in its July 17 letter for not "reneging" on its commitment. It is clear that the superseniority issue caused a serious breakdown in the negotiations. This, as well as the evidence set forth of the petitioner's insistence on including superseniority, provides a substantial basis for an inference of causal connection between the violation of § 8(a) (5) and the prolongation of the strike. The claim of the Board that the superseniority policy contributed materially to the strikers' capitulation on July 19 is not inconsistent with the inference mentioned.

We think there is substantial evidence in the record to support the finding that petitioner's insistence on including the unlawful superseniority policy in the agreement, in violation of § 8(a) (5) and (1), prolonged and aggravated the strike. Therefore, we find no error in the conclusion that petitioner's unfair labor practices converted the economic strike into an unfair labor practice strike.

■ It follows that petitioner's refusal to reemploy certain of its strikers, and its failure to reinstate others, constitute discrimination in regard to hire and tenure of employment, thereby discouraging membership in the Union, all in violation of § 8(a) (3) of the Act.

Because the Board's findings are supported by substantial evidence, and its

conclusions of violations of § 8(a) (1), (3) and (5) not erroneous, the petition to set aside the Board's order will be denied, and the order will be enforced.